ORIGINAL

# In the United States Court of Federal Claims

No. 12-370C
Filed: August 19, 2013

FILED

AUG 1 9 2013

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * *     *
                            *
CAROL ANN VASKO,            *
                            *    Pro Se Plaintiff; Failure to State a
            Plaintiff,      *    Claim;  Lack  of  Subject  Matter
                            *    Jurisdiction; Breach of Contract;
v.                          *    Takings; Torts; Due Process.
                            *
UNITED STATES,              *
                            *
            Defendant.      *
                            *
* * * * * * * * * * * *     *
```

Carol Ann Vasko, Austell, GA, pro se.

Loren M. Preheim, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington D.C., for the defendant. With him were Jeanne E. Davidson, Director, Commercial Litigation Branch, and Stuart F. Delery, Assistant Attorney General, Civil Division.

## O P I N I O N

HORN, J.

### FINDINGS OF FACT

Carol Ann Vasko, a pro se plaintiff, filed a three-page complaint against the United States in the United States Court of Federal Claims, alleging a breach of contract and seeking damages "in excess of Ten Thousand Dollars . . . and costs and such other and further relief as this Court deems just and proper." Plaintiff's complaint was accompanied by an Application to Proceed In Forma Pauperis, which the court granted. Defendant filed an original motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. In response, plaintiff filed an amended complaint, rendering defendant's motion moot, in which she added allegations of a taking under the Fifth Amendment of the United States Constitution and deprivation of plaintiff's constitutional rights to her earlier breach of contract claim. Plaintiff subsequently filed a motion to withdraw and strike her amended complaint.[1] Defendant then re-filed its

---

[1] Both parties, however, refer to the amended complaint in subsequent filings. Plaintiff requested to "incorporate by reference" portions of her amended complaint and exhibits

motion to dismiss, or in the alternative, for summary judgment.  On the same date plaintiff responded to the re-filed motion, plaintiff also filed a motion for leave to file a supplemental pleading and attached "Plaintiff's First Supplemental Pleading," in which she alleged that subsequent actions by defendant added to plaintiff's injury, and re-alleged and elaborated on the takings claim and due process claim alluded to in plaintiff's stricken amended complaint.

The sequence of filed, and withdrawn, pleadings in this case, as well as the multiple requests for extensions of time, clouded and prolonged the procedural history of the case.  Plaintiff's allegations are at times confused and contradictory, including with regard to the factual history of the property in question.  Recognizing, however, Ms. Vasko's pro se status, the court has read her submissions carefully in order to compile the apparent facts and understand the fundamentals of her complaint. Plaintiff's allegations are each addressed for plaintiff's edification as to the merit of her claims, in addition to a ruling on defendant's motion.

Plaintiff states her interest in the property located at 1721 Nathan Lane, Austell, Georgia began in "1996 when she thought she purchased said property from a Bill Brown."  Plaintiff included as exhibits to several of her pleadings a number of document copies, including an "owner's affidavit" from William A. Brown, Jr., a warranty deed to Ms. Vasko, dated September 27, 1996, which bears the signature of William A. Brown, Jr., but which plaintiff acknowledges was not recorded, a "Truth in Lending Disclosure Statement" from William A. Brown, Jr. regarding the property, and an earlier warranty deed, together with other various documents related to the history of the property.

Defendant's interest in the Nathan Lane property stems from the 1992 purchase of the property by Howard S. and Helen A. McKinney from American National Financial, Inc.  Defendant asserts that Mr. McKinney received a loan from the Bank of Oklahoma to purchase the property

> through the Department of Veteran Affairs (VA) Home Loan Program . . . .
> This program allows veterans . . . to obtain a loan from a private lender,
> which the VA "stands behind  . . . ."  The program also generally allows
> loan servicers to convey properties to VA following loan termination, so
> they do not have the added risk of managing and marketing the
> properties.

(citation omitted).  A security deed, dated December 14, 1992, recorded on December 22, 1992, and re-recorded on February 10, 1993, details the conveyance of the property to the McKinneys from American National Financial, Inc. and includes a VA Assumption Policy Rider.  Defendant asserts that, "[a]fter Mr. McKinney failed to make payments due under the mortgage, the Bank of Oklahoma foreclosed on the home and, in late 2011, transferred ownership to the VA."

---

attached thereto in "Plaintiff's First Supplemental Pleading," and defendant refers to the amended complaint in its response to plaintiff's supplemental pleading.

Plaintiff claims "that McKinney never lived nor intended to live at the property" and "that the property was purchased for McKinney's daughter, Debra McKinney Carter." Plaintiff alleges that William A. Brown, Jr. purchased the property from the McKinneys on September 26, 1996, one day prior to plaintiff's alleged purchase from Mr. Brown, as indicated by a notarized warranty deed signed by Mr. Brown, and an "unofficial" witness, as well as Debra June McKinney Carter, acting as her parents' "attorney-in-fact." The warranty deed conveying the property from the McKinneys to Mr. Brown, however, was not filed with the appropriate county in Georgia, Cobb County, until October 30, 2009, approximately thirteen years after plaintiff claims to have purchased the property from Mr. Brown.

Plaintiff alleges that when she purchased the property in 1996, "Brown said the property was to stay in McKinney's name . . . until Plaintiff's mortgage was paid off." Plaintiff claims her "only duty in the purchase was to make a monthly payment of Six Hundred Dollars ($600.00)," and that "[p]laintiff was to have no financial cares regarding the Property except for the monthly mortgage payment." Ms. Vasko further claims that "Bill Brown alleged that Plaintiff had an interest in the Property in question," although plaintiff does not specifically identify what type of property interest. Plaintiff has inconsistently identified her alleged interest in the Nathan Lane property, stating in various documents that she was an owner, tenant at will, and tenant at sufferance. In her now withdrawn amended complaint, however, plaintiff asserted, "Plaintiff is not a tenant at sufferance. It is counterintuitive to claim Plaintiff is a tenant as she owns the Property."

Plaintiff alleges that, in 2003, she discovered that the property taxes for 1721 Nathan Lane "were very low, about Ninety Dollars ($90.00) a year compared to the neighbors [sic] that were about Nine Hundred Dollars ($900.00), the reason being McKinneys [sic] name was never removed from the tax roll, maintaining their generous exemptions." Plaintiff claims she "notified the tax assessor's office" that she owned the property and "[t]he taxes went up tremendously," leading her to contact Brown to "clarify[] that Plaintiff in no way was going to be responsible for this tax snafu, that her monthly payment was going to stay at Six Hundred Dollars ($600.00) as they agreed." After this exchange, plaintiff claims that "Brown sent Plaintiff a copy of McKinney's Bank of Oklahoma bank statement, the first time Plaintiff received any such information." Plaintiff asserts that, after learning about the McKinneys' loan from the Bank of Oklahoma, she began contacting the bank, as well as the VA, "putting them on notice that she was the owner of the property." She also claims that, sometime after 2003, she learned that her monthly payments of six hundred dollars to Brown were being used to pay "McKinney's monthly loan payment of $400.00," which plaintiff identifies as "the VA loan," while, according to plaintiff, "Brown kept $200.00." Plaintiff claims she "kept on paying for the mortgage, thinking the house was hers, when in reality Plaintiff was just paying off the VA loan, to the benefit of Defendant."

Sometime after the property taxes increased, the payments on the McKinneys' mortgage ceased. The parties disagree as to who was responsible for paying the mortgage. Plaintiff asserts that "Brown's representative stopped paying McKinney's mortgage," while defendant claims "Mr. McKinney failed to make payments due under

the mortgage."[2] Both parties agree, however, that the Bank of Oklahoma foreclosed on the home in 2011, despite plaintiff having filed an injunction to stop the foreclosure in the Superior Court of Cobb County, Georgia on November 19, 2010.

On November 8, 2011, the Bank of Oklahoma transferred the property to the Secretary of Veterans Affairs. On January 10, 2012, in the Cobb County Magistrate Court, the Secretary of Veteran Affairs initiated a "Proceeding Against Tenant Holding Over" against "Howard S. McKinney, Helen A. McKinney And All Others," which defendant describes as "an eviction action against anyone living in the home." Plaintiff appears to have been living on the property at the time and received notice of the proceeding. She alleges that she attended a March 2, 2012 hearing, at which the court "entered the writ of possession in favor of the VA." Robert W. Shurtz, an attorney associated with the private law firm McCalla Raymer, represented the Secretary of Veterans Affairs at the dispossessory hearing. Plaintiff claims that she had met Attorney Shurtz at a hearing in February 2012, and that she had "assured Mr. Schurtz [sic] that she would appeal" if the court ruled in favor of the VA. Plaintiff also alleges that at the March 2, 2012 hearing, "Attorney Schurtz [sic] put the Magistrate Court on notice that Plaintiff . . . was appealing the decision. The writ of possession was stayed on the condition that Plaintiff . . . would appeal."

Because Georgia law required that a tenant appealing a judgment in a dispossessory case pay both past due rent and "all future rent as it becomes due into the registry of the trial court," see Ga. Code Ann. § 44-7-56 (2012); see also Ga. Code Ann. § 44-7-54 (2012), on March 2, 2012, the Cobb County Magistrate Court issued an "Order on Motion to Compel Payment of Rent into Court," requiring plaintiff to pay rent each month in the amount of $600.00 to the court. The Magistrate Court's Order also stated that "[u]pon the Defendants' [Ms. Vasko's] failure to make any of the payments on the date it is due into the registry of the court, a writ of possession shall issue instanter without further hearing."

It was at this time, in March of 2012, that plaintiff alleges she entered into an oral contract with "the United States of America, by and through the Secretary of Veterans Affairs, by and through his legal counsel Robert W. Shurtz," who she claims "stated to Plaintiff that Plaintiff could live at the Nathan Lane address as long as she wanted, the only stipulation being that she pay Six Hundred Dollars ($600.00) (a month)." Plaintiff has inconsistently described the terms of the alleged contract, stating in various pleadings: "Plaintiff and her family were to remain in the house during all of the appellate procedure," plaintiff and defendant made "an agreement that allowed Plaintiff to stay in the property while appeals in all court [sic] continued," and "Plaintiff could stay in the house as long as she wanted."

---

[2] There is some suggestion by Ms. Vasko that Mr. McKinney may have passed away in 2003 or 2004 and that Mr. Brown also was deceased.

Plaintiff asserts that she made one $600.00 payment to the Cobb County Magistrate Court.[3] Defendant agrees that plaintiff made one payment to the court in March 2012, but adds that she "then stopped making payment." Despite failing to make the required payments to the court, plaintiff stated she "believes and claims this [her alleged agreement with Shurtz] to be a binding rental contract sufficient to satisfy the Statute of Frauds." In addition to not making her April 2012 rent payment, plaintiff failed to file a timely appeal following the writ of possession. On April 13, 2012, the Cobb County Magistrate Court issued an Order stating that plaintiff "is no longer entitled to possession of the premises."

Plaintiff states:

> The gravemen [sic] of this action is that the United States of America, by and through the Secretary of Veteran Affairs, by and through their counsel Robert W. Shurtz, violated Plaintiff's rights pertaining to a verbal rental agreement of her residence at 1721 Nathan Lane, Austell, Georgia . . . resulting in trespass to Plaintiff's home and damages.

Plaintiff alleges that, on May 23, 2012, the VA "breached its contract with Plaintiff by arriving at Plaintiff's address with a moving company and attempting to vacate Plaintiff and her family from their home." According to plaintiff, defendant was only stopped when, on the same day, May 23, 2012, plaintiff obtained a temporary restraining order from the Superior Court of Cobb County, the same court in which plaintiff had filed for an "injunction to stop foreclosure" against the Bank of Oklahoma on November 19, 2010. Although the May 23, 2012 eviction was stopped by the temporary restraining order, plaintiff claims that, as a result of the "acts of the United States of America, severe damage was done to Plaintiff's property and the property of her family. The movers stole valuables, especially jewelry and coins and cash. . . . Over seventy five percent of Plaintiff's possessions are either damaged, destroyed or stolen." On May 25, 2012, plaintiff also filed a second complaint in the Superior Court of Cobb County, adding the Secretary of Veterans Affairs as a defendant, and alleging that "the Secretary of Veterans Affairs evicted her and her family as tenants, May 23, 2012, in contrariety [sic] to Plaintiff's claim to the property." The Superior Court issued an order terminating and dismissing the temporary restraining order on June 25, 2012, and a consent order dismissing the Cobb County court case on August 1, 2012. On October 19, 2012, Ms. Vasko was evicted from the property located at 1721 Nathan Lane, Austell, Georgia, pursuant to the writ of possession issued to the Secretary of Veterans Affairs.

In her later filings in this court, plaintiff alleges that, in addition to the real property claims, defendant also effected a taking of plaintiff's personal property by "refus[ing] to allow Plaintiff her possessions when she asked for them," and by keeping a "GE Profile [stove] and such items as bookshelves, dishwasher, faucets, and [a] variety of other

---

[3] In her March 7, 2013 filing, plaintiff claims that she attempted to make a second payment, but the payment arrived at the court thirty minutes too late. The Order issued by the magistrate court requiring payment stated: "Payments shall be made at the clerk's office . . . during regular business hours, on or before the day ordered."

items . . . in the house." Plaintiff also claims that "Defendant failed to put Plaintiff's family possessions in areas wherein Plaintiff's family could remove them." Plaintiff argues that the "[d]ispossessory denies Plaintiff her constitutionally protected rights," including her due process rights.[4] Plaintiff claims entitlement to $85,000.00, although no support is offered for the amount. Plaintiff claims damages for "the value of the real estate at 1721 Nathan Lane, Austell, Georgia and the cost of replacement or repair" of plaintiff's and her family's personal property.[5]

In its re-filed motion to dismiss, with respect to plaintiff's breach of contract claim, defendant argues that plaintiff "fails to sufficiently allege that Mr. Shurtz had authority to bind the United States in the alleged contract." Defendant also asserts that plaintiff's takings claims fail because plaintiff does not have a legally cognizable interest in the real property, plaintiff does not claim that the real property or her personal property were taken for public use, and plaintiff is barred from bringing this claim by the doctrine of collateral estoppel. In addition, defendant argues that this court does not have jurisdiction to hear plaintiff's tort or due process claims.

## DISCUSSION

When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977). "However, '[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading.'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an

---

[4] Once again in her filings plaintiff reiterates (although previously struck from the record at plaintiff's request) that she "relies upon the information . . . of Plaintiff's First Amended Complaint," in which she alleged violations of her Fourth, Fifth, and Fourteenth Amendment rights. In subsequent filings, however, plaintiff only raises a violation of her due process rights under the Fifth Amendment.

[5] In her original complaint, filed before the October 19, 2012 eviction, plaintiff alleges that she informed Mr. Shurtz that "the house was only worth Twelve Thousand Dollars ($12,000.00) (the recent purchase price) . . . ." After the October 19, 2012 eviction, plaintiff filed her amended complaint, later struck at her request, in which she sought $25,000.00 in damages "for property 'taken,' stolen, damaged, destroyed, from Plaintiff and her family in what Plaintiff considers to be an illegal eviction . . . ."

attorney, the <u>pro se</u> plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." <u>Riles v. United States</u>, 93 Fed. Cl. 163, 165 (2010) (citing <u>Hughes v. Rowe</u>, 449 U.S. at 9; <u>Taylor v. United States</u>, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2002).

According to the United States Court of Appeals for the Federal Circuit:

> If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1). If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

<u>Adair v. United States</u>, 497 F.3d 1244, 1251 (Fed. Cir. 2007) (citations omitted). A motion to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC) for failure to state a claim upon which relief can be granted "'is appropriate when the facts asserted by the claimant do not under the law entitle him [or her] to a remedy.'" <u>Murdock v. United States</u>, 103 Fed. Cl. 389, 394 (2012) (alterations in original) (quoting <u>Perez v. United States</u>, 156 F.3d 1366, 1370 (Fed. Cir. 1998)). In examining what must be pled in order to state a claim, under both RCFC 8(a)(2) and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2012); Fed. R. Civ. P. 8(a)(2) (2013); <u>see also Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>TrinCo Inv. Co. v. United States</u>, No. 2012-5139, 2013 WL 3746090, at *4 (Fed. Cir. July 18, 2013) ("To avoid dismissal under RFCF [RCFC] 12(b)(6), a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'") (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555)). The United States Supreme Court in <u>Twombly</u> stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss [for failure to state a claim] does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, <u>see</u> 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), <u>see</u>, <u>e.g.</u>, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual

allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (footnote and other citations omitted; brackets and omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 131 S. Ct. 92 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 130 S. Ct. 3468 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 129 S. Ct. 2878 (2009); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010), appeal dismissed, 454 F. App'x 900 (2011); Legal Aid Soc'y of New York v. United States, 92 Fed. Cl. 285, 292, 298, 298 n.14 (2010); Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed. Cir. 2013) ("the factual allegations must 'raise a right to relief above the speculative level' and must cross 'the line from conceivable to plausible.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)).

When deciding whether a plaintiff has failed to state a claim upon which relief can be granted, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Cambridge v. United States, 558 F.3d at 1335 (citing Papasan v. Allain, 478 U.S. at 283); Cary v. United States, 552 F.3d at 1376 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Anaheim Gardens v. United States, 444 F.3d 1309, 1315 (Fed. Cir.), reh'g denied (Fed. Cir. 2006); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); Perez v. United States, 156 F.3d at 1370; Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If a defendant or the court challenges jurisdiction or a plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). Therefore, although the court must assume that the undisputed facts alleged in the complaint are true for the purposes of the motion to dismiss and draws all reasonable inferences in the plaintiffs' favor, the facts alleged in the complaint must be plausible and not merely naked assertions devoid of a factual basis. See Ashcroft v.

Iqbal, 556 U.S. at 678; see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (mere allegations of law and conclusions of fact are insufficient to support a claim); SUFI Network Servs., Inc. v. United States, 102 Fed. Cl. 656, 660 (2012) (plaintiff "must provide more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. at 286))).

## Breach of Contract Claim

Plaintiff claims that defendant breached a rental contract, which she alleges she verbally entered into with the VA through Attorney Robert W. Shurtz. Mr. Shurtz is an attorney, who, at the time of the dispossessory hearing, was associated with the private law firm McCalla Raymer, and had been retained by the VA "for purposes of handling eviction proceedings concerning the Nathan Lane property." Although plaintiff acknowledges that there is no written rental contract associated with her claim, she cites to Georgia law, which states that "[c]ontracts creating the relationship of landlord and tenant for any time not exceeding one year may be by parol." Ga. Code Ann. § 44-7-2(a) (2012). Plaintiff asserts that the oral contract was "sufficient to satisfy the Statute of Frauds . . . in that it would not last longer than a year."

Plaintiff alleges her contract with defendant was entered into on March 2, 2012, the same day as the hearing in which the Cobb County Magistrate Court signed the writ of possession in favor of the VA. As noted above, plaintiff's description of the terms of the alleged contract varies in her submissions to this court. Ms. Vasko relies on her allegation that Attorney Shurtz entered into an agreement with plaintiff that she "could live at the Nathan Lane address so long as she wanted, the only stipulation being that she pay . . . ($600.00) (a month)." (parentheses in original). She also states, however, "Plaintiff and her family were to remain in the house during all of the appellate procedure," as well as, "an agreement . . . allowed Plaintiff to stay in the property while appeals in all courts continued." As noted above, however, plaintiff also suggests the rental agreement was for no longer than a one-year term, as she states, to meet the Statute of Frauds.

Although plaintiff inconsistently describes the contract terms, all descriptions appear to indirectly reference the Cobb County Magistrate Court's "Order on Motion to Compel Payment of Rent into Court." Plaintiff was ordered to pay rent in the amount of $600.00 to the court each month, which she claims would allow her to maintain possession of the property. See Ga. Code Ann. §§ 44-7-54, 44-7-56.[6] Plaintiff,

---

[6] Georgia Code section 44-7-54 provides, in relevant part:

> (a) In any case where the issue of the right of possession cannot be finally determined within two weeks from the date of service of the copy of the summons and the copy of the affidavit, the tenant shall be required to pay into the registry of the trial court:

however, only paid rent once, in March 2012, and failed to continue making rental payments or to file a timely appeal regarding the writ of possession. Nonetheless, plaintiff claims that on "May 23, 2012, . . . the United States of America, [sic] breached its contract with Plaintiff by arriving at Plaintiff's address with a moving company and attempting to vacate Plaintiff and her family from their home." Defendant responds that plaintiff has not alleged the elements necessary to establish the existence of an express or implied-in-fact contract with the United States because she has not alleged facts showing that Attorney Shurtz had the authority to bind the United States in the alleged contract.

Because plaintiff does not allege that she signed a written rental agreement for the Nathan Lane property with Attorney Shurtz, or anyone else allegedly representing the United States, plaintiff must be relying on the alleged oral agreement she claims was entered into with Attorney Shurtz in order to establish that she entered into a contract with the United States. Contract claims against the United States are governed by the Tucker Act, which grants jurisdiction to this court as follows:

> (1) All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease which become due after the issuance of the dispossessory warrant, said rent and utility payments to be paid as such become due.
>
> . . .
>
> (b) If the tenant should fail to make any payment as it becomes due pursuant to paragraph (1) or (2) of subsection (a) of this Code section, the court shall issue a writ of possession and the landlord shall be placed in full possession of the premises by the sheriff, the deputy, or the constable.

Ga. Code Ann. § 44-7-54. Section 44-7-56, pertaining to appeals of dispossessory proceedings, states:

> If the judgment of the trial court is against the tenant and the tenant appeals this judgment, the tenant shall be required to pay into the registry of the court all sums found by the trial court to be due for rent in order to remain in possession of the premises. The tenant shall also be required to pay all future rent as it becomes due into the registry of the trial court pursuant to paragraph (1) of subsection (a) of Code Section 44-7-54 until the issue has been finally determined on appeal.

Ga. Code Ann. § 44-7-56.

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained.[7] See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Testan, 424 U.S. 392, 400 (1976); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established." Russell Corp. v. United States, 210 Ct. Cl. 596, 606, 537 F.2d 474, 481 (1976), cert. denied, 429 U.S. 1073 (1977)). Implied-in-fact contracts are agreements ""founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."" Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Bank of Guam v. United States, 578 F.3d at 1329 (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326); Bay View, Inc. v. United States, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. at 728 (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597; Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 482. Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 482.

To invoke the jurisdiction of the United States Court of Federal Claims for her breach of contract claim, Ms. Vasko "must show that either an express or implied-in-fact contract underlies [her] claim." Trauma Serv. Grp. v. United States, 104 F.3d at 1325. "'A well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract.'" De Archibold v. United States, 57 Fed. Cl. 29, 32 (2003) (quoting McAfee v. United States, 46 Fed. Cl. 428, 432, appeal dismissed, 243 F.3d 565 (Fed. Cir. 2000)). "A party

---

[7] Ms. Vasko makes no allegations of entitlement to a refund or of prior payment to the United States.

alleging either an express or implied-in-fact contract with the government 'must show a mutual intent to contract including an offer, an acceptance, and consideration.'" Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Chattler v. United States, 632 F.3d 1324, 1330 (Fed. Cir.) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325), reh'g en banc denied (Fed. Cir. 2011); Hanlin v. United States, 316 F.3d 1325,1328 (Fed. Cir. 2003) (citing City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998)); Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract.") (citations omitted), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 522 U.S. 857 (1997); Toon v. United States, 96 Fed. Cl. 288, 299-300 (2010); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. at 728 (citing Total Med. Mgmt., Inc. v. United States, 104 F.3d at 1319). The elements of a binding contract with the United States are identical for express and implied-in-fact contracts. See De Archibold v. United States, 57 Fed. Cl. at 32 (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005) (citing Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002), cert. denied, 539 U.S. 910 (2003)); Mastrolia v. United States, 91 Fed. Cl. 369, 384 (2010) (citing Flexfab, L.L.C. v. United States, 424 F.3d at 1265); Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (citing Cal. Fed. Bank, FSB v. United States, 245 F.3d 1342, 1346 (Fed. Cir. 2001); City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990); Russell Corp. v. United States, 210 Ct. Cl. 596, 608, 537 F.2d 474, 481–82 (1976); Rivera v. United States, 105 Fed. Cl. 644, 650 (2012).

Significantly, however, the government "is not bound by its agents acting beyond their authority and contrary to regulation." Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1153 (Fed. Cir. 1983) (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)) (other citations omitted); see also Chattler v. United States, 632 F.3d 1324, 1330 (Fed. Cir. 2011); Toon v. United States, 96 Fed. Cl. 288, 299-300 (2010); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 714 (2010). Privity of contract between a plaintiff and the government is required to bring a cause of action in the United States Court of Federal Claims for express and implied contracts. See Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("Under the Tucker Act, the Court of Federal Claims has jurisdiction over claims based on 'any express or implied contract with the United States.' 28 U.S.C. § 1491(a)(1) (1994). We have stated that '[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government.' Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990). In other words, there must be privity of contract between the plaintiff and the United States. See Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984) ('The government consents to be sued only by those with whom it has privity of contract.')."); see also S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 (Fed. Cir.) ("A plaintiff must be in privity with the United States to have standing to sue the sovereign

on a contract claim," but noting exceptions to this general rule (citing Anderson v. United States, 344 F.3d at 1351; United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939))), reh'g and reh'g en banc denied (Fed. Cir. 2005), cert. denied, 548 U.S. 904 (2006). Moreover, for a contract to be valid, it must be made and entered into with someone who can enforce the contract. In other words, with limited exceptions which do not apply here, the "government consents to be sued only by those with whom it has privity of contract." Flexfab, L.L.C. v. United States, 424 F.3d at 1263 (quoting Erickson Air Crane Co. of Wash. v. United States, 731 F.2d at 813); see also City of El Centro v. United States, 922 F.2d at 820.

"[T]he burden rests with the party asserting the existence of a contract with the United States to determine whether the person with whom it dealt had actual authority to enter into the contract on behalf of the Government." Perri v. United States, 53 Fed. Cl. 381, 394 (2001), aff'd, 340 F.3d 1337 (Fed. Cir. 2003). "'An employee of the Government possesses *express authority* to obligate the Government *only* when the Constitution, a statute, or a regulation grants it to that employee in unambiguous terms.'" Abraham v. United States, 81 Fed. Cl. 178, 186 (2008) (emphasis in original) (quoting Garza v. United States, 34 Fed. Cl. 1, 18 (1995)). However, "[a]uthority to bind the government may be implied when it is an integral part of the duties assigned to the particular government employee." Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1346 (Fed. Cir.) (citing H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989)), reh'g and reh'g en banc denied (Fed. Cir. 2007).

Attorney Shurtz, according to his uncontested declaration submitted to this court, was "not an employee of the Department of Veterans Affairs or any other Federal agency." Attorney Shurtz states in his declaration that he has "never represented to the public that I am a Contracting Officer or indicated in any manner that I have authority to enter into contracts on behalf of the United States or any Federal Agency." Attorney Shurtz was hired to represent the Secretary of Veterans Affairs at the dispossessory hearing in Cobb County Magistrate Court in order to remove plaintiff from the property, and there is no indication in the record that he had authority to authorize plaintiff to remain on the property indefinitely. To the contrary, he was the attorney hired by the VA to have Ms. Vasko evicted.

Anyone entering into an agreement with the government assumes the risk of having "accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Flexfab, L.L.C. v. United States, 424 F.3d at 1260 (quoting Fed. Crops Ins. Corp. v. Merrill, 332 U.S. at 384). Even "apparent authority of the government's agent . . . is not sufficient; an agent must have actual authority to bind the government." Winter v. Cath-dr/Balti Joint Venture, 497 F.3d at 1344 (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325). Although plaintiff claims Mr. Shurtz "said he worked for the VA," plaintiff admits that "[a]t the time of this [February 2012 magistrate court] hearing McCalla Raymer website showed Mr. Shurtz as one of their attorneys," conceding that plaintiff knew Mr. Shurtz worked for a private law firm, and was not a government employee. Plaintiff argues that, although

> McCalla Raymer and Mr. Shurtz are independent contractors, the government has obviously delegated authority to same with matters of this foreclosure . . . . McCalla Raymer keeps an open line of communication with the government, carbon copying the correspondence to the government, keeping the government well informed, such that the government is responsible for this agent in this setting.

Ms. Vasko's argument, however, fails. Mr. Shurtz was retained to represent defendant at the dispossessory hearing and his function was to remove plaintiff from the property, not to permit her to remain on the property indefinitely.

Plaintiff also has not demonstrated any of the other elements, in addition to actual authority, necessary for entering into a contract with the United States government. As noted above, in order to prevail on a claim based on an express or an implied-in-fact contract, a plaintiff must show: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance and; (4) actual authority on the part of the government's representative to bind the Government." Mastrolia v. United States, 91 Fed. Cl. at 384 (citing Flexfab, LLC v. United States, 424 F.3d at 1265; Abraham v. United States, 81 Fed. Cl. at 184). Plaintiff has not alleged any facts that suggest that the United States intended to enter into a contract with plaintiff regarding the Nathan Lane property. Moreover, plaintiff's various descriptions of what she alleges were the contract terms also indicate that no contract came into being between plaintiff and Attorney Shurtz, or anyone else. There also was no allegation of consideration exchanged between plaintiff and the United States, as plaintiff only alleges she made monthly payments to Mr. Brown, and made the single, $600.00 payment to the Cobb County Magistrate Court, in accordance with the court's "Order on Motion to Compel Payment of Rent into Court." At no point has plaintiff demonstrated that she even spoke with, much less entered into an agreement with, any individual authorized to contract on behalf of the government. For these reasons, plaintiff has failed to plead the essential elements for the existence of a contract with the United States. Absent an existing contract, either express or implied-in-fact, between plaintiff and defendant, plaintiff cannot recover against the government for an alleged breach of contract.

### Takings Claims

Although not in her original complaint, plaintiff also tries to raise allegations of a taking under the Fifth Amendment to the United States Constitution in her amended complaint, and specifically alleged a takings claim in "Plaintiff's First Supplemental Pleading," with regard to the real property at issue, as well as with regard to her personal property. Plaintiff also briefly, and without elaboration, referenced a "breach and taking" in her "Response to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment." Claims raised for the first time in a response brief are generally waived. See Kalick v. United States, 109 Fed. Cl. 551, 561 n.10 (2013) (citing Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1366 (Fed. Cir. 2002); United States v. Ford Motor Co., 463 F.3d 1267, 1276-77 (Fed. Cir. 2006)); see also Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990). Under RCFC 15(d),

however, a party may be permitted to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." RCFC 15(d) (2012); see also Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. 37, 44 ("Recent cases confirm that a supplemental pleading may include a new cause of action 'provided there is some relationship between the original and the later accruing material.'" (citations omitted)), recons. denied, 105 Fed. Cl. 132 (2012), recons. denied, 108 Fed. Cl. 398 (2013). Given the liberal construction afforded to pro se plaintiffs' pleadings, see Haines v. Kerner, 404 U.S. at 520-21, the fact that Ms. Vasko raised allegations of a taking in her now stricken amended complaint, and "Plaintiff's First Supplemental Pleading" addresses limited events that took place after plaintiff filed her original complaint, the court addresses plaintiff's takings allegations to explain to plaintiff why her takings claim also must fail.

The takings clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V.  The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005), recognized by Hageland Aviation Servs., Inc. v. Harms, 210 P.3d 444 (Alaska 2009); see also Lingle v. Chevron U.S.A. Inc., 544 U.S. at 536; E. Enters. v. Apfel, 524 U.S. 498, 522 (1998); Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24, reh'g denied, 439 U.S. 883 (1978); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2009), cert. denied, 130 S. Ct. 1501 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Res. Invs., Inc. v. United States, 85 Fed. Cl. 447, 469-70 (2009); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified").

To succeed under the Fifth Amendment takings clause, a plaintiff must show that the government took a private property interest for public use without just compensation.  See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008).  The government must be operating in its sovereign, rather than in its proprietary capacity, when it initiates a taking.  See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v.

Gen. Motors Corp., 323 U.S. 373 (1945)); CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2459 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002) (citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992))), cert. denied, 545 U.S. 1139 (2005). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003); M & J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381; Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372).

Property interests are not created by the Constitution, but rather "'"they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."'" Ruckelshaus v. Monsanto Co., 467 U.S. at 1001 (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972))); see also Florida Rock Indus., Inc. v. United States, 18 F.3d 1560, 1575 (Fed. Cir. 1994) ("Rights in land depend on the law of the particular state." (citing Preseault v. ICC, 494 U.S. 1, 16 n.9, 20-25 (1990))). When analyzing an alleged taking, therefore, the court must determine whether the plaintiff had an interest in the real property under state law. See Glosemeyer v. United States, 45 Fed. Cl. 771, 776 (Fed. Cl. 2000) ("[W]hen a federal court analyzes the effect of federal action on real property, it must utilize the law of the situs." (citing Foster v. United States, 221 Ct. Cl. 412, 420-21, 607 F.2d 943, 948 (1979))).

Plaintiff has failed to establish that she had a legally cognizable property interest in the Nathan Lane property to which she claims entitlement. She has alleged in various pleadings that she was an owner, tenant at will, and tenant at sufferance, but has not documented her property right allegations. The documentation provided to the court by plaintiff and defendant supports the claim that there was a valid conveyance of the Nathan Lane property from American National Financial, Inc. to Howard S. and Helen A. McKinney on December 22, 1992. There also is evidence in the record that the McKinneys purchased the home with a loan from the Bank of Oklahoma, guaranteed by the VA as part of the VA Home Loan Program. Plaintiff alleges that

William A. Brown, Jr. purchased the Nathan Lane property from the McKinneys on September 26, 1996, and plaintiff claims she purchased the property from Mr. Brown. Plaintiff provided copies of a warranty deed purporting to convey the property from Howard S. and Helen A. McKinney to William A. Brown, Jr., dated September 26, 1996, an "owner's affidavit" signed by William A. Brown, Jr. on September 27, 1996, representing that he was the rightful owner of the Nathan Lane property, and a warranty deed purporting to convey the property from William A. Brown, Jr. to plaintiff on September 27, 1996.   There were problems with these legal documents, however, including the fact that the warranty deed conveying the property from the McKinneys to Mr. Brown was not filed with the appropriate county until October 20, 2009, more than thirteen years after plaintiff alleges Mr. Brown sold the property to her.   In addition, plaintiff acknowledges that she knew the property "was to stay in McKinney's name . . . until Plaintiff's mortgage was paid off."

Although the chain of title is murky, it appears that the Bank of Oklahoma mortgage remained in the McKinneys' name, and was guaranteed by the VA. When the mortgage payments ceased, the Bank of Oklahoma foreclosed on the Nathan Lane property and, on November 8, 2011, transferred the property to the Secretary of Veterans Affairs. The Secretary of Veterans Affairs then initiated a "Proceeding Against Tenant Holding Over" in the Cobb County Magistrate Court, in which the Cobb County Court acknowledged the VA's title and, after a hearing, "entered the writ of possession in favor of the VA" on March 2, 2012.  The Georgia state court, therefore, determined that the Secretary of Veterans Affairs held title to the Nathan Lane property, not plaintiff, and that anyone occupying the property was an unlawful tenant.  Plaintiff was given the opportunity to appeal the Magistrate Court's decision, but failed to file a timely appeal and also failed to comply with court's order that she pay rent into the registry of the court as it came due, pending the appeal.   On April 13, 2012, the Cobb County Magistrate Court issued an order stating that plaintiff "is no longer entitled to possession of the premises."  Thus, the Georgia state court determined that, under Georgia law, plaintiff had no valid property interest in the Nathan Lane property.  In causing plaintiff to be evicted from the Nathan Lane property, defendant was acting pursuant to its possessory rights established under applicable Georgia law.

Plaintiff also argues that she had an interest in the Nathan Lane property through adverse possession.  Citing <u>Kingman Reef Atoll Investments, L.L.C. v. United States</u>, 541 F.3d 1189, 1199 (9th Cir. 2008), defendant correctly argues that "the United States cannot 'lose property rights through adverse possession.'"  To the extent that plaintiff claims she obtained an interest through adverse possession, Georgia law states:

> Prescription shall not run against the owner or holder of a mortgage, a deed to secure debt, a bill of sale to secure debt, or any other instrument creating a lien on or conveying an interest in real or personal property as security for debt in favor of a person who has actual or constructive notice of such instrument.

Ga. Code Ann. § 44-5-176 (2012). "'[I]n the absence of fraud, a deed which, on its face, complies with all statutory requirements is entitled to be recorded, and once accepted and filed with the clerk of court for record, provides constructive notice to the world of its existence.'" <u>Byers v. McGuire Properties, Inc.</u>, 679 S.E.2d 1, 4 (Ga. 2009) (quoting <u>Leeds Bldg. Products v. Sears Mortg. Corp.</u>, 477 S.E.2d 565 (Ga. 1996); <u>see also Deljoo v. SunTrust Mortg., Inc.</u>, 668 S.E.2d 245, 246 (Ga. 2008) ("For more than a century, it has been recognized that a purchaser of land in this state 'is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed.'") (quoting <u>Talmadge Bros. & Co. v. Interstate Bldg. & Loan Assn.</u>, 31 S.E. 618 (Ga. 1898)).  The 1992 security deed conveying the Nathan Lane property from American National Financial, Inc. to the McKinneys was recorded on December 22, 1992 and re-recorded on February 10, 1993.  Plaintiff claims that, although the security deed was filed in 1992, it did not give her constructive notice when she purchased the property in 1996 because "the Attorney's Affidavit . . . was notarized but not signed. . . . Georgia law provides that a patently defective document in the transfer of property does not give constructive notice to a bonafide [sic] purchaser."  Plaintiff appears to be referring to the "Closing Attorney's Affidavit" attached to the 1992 security deed.  The 1992 security deed was signed by Harold S. McKinney, Helen A. McKinney, and an "additional" witness, and had been notarized, meeting all the requirements of Georgia Code § 44-14-33 (2012). Even if the 1992 security deed was "defective" due to a missing signature on the closing attorney's affidavit, that defect was corrected on February 10, 1993, when the security deed was re-recorded "to add the signature of the closing attorney to the closing attorney's affidavit."  A valid security deed was, therefore, in place well before plaintiff claims to have established her interest in the property in 1996.  Plaintiff also has acknowledged that, at the time she allegedly purchased the Nathan Lane property from William A. Brown, Jr. in 1996, "Brown said the property was to stay in the McKinney's name . . . until Plaintiff's mortgage was paid off."  When plaintiff allegedly purchased the Nathan Lane property from Mr. Brown, she at least had constructive, if not actual, notice of the McKinney's ownership interest.

In addition, there was a warranty deed for the Nathan Lane property, purporting to convey the property from Howard S. and Helen A. McKinney to William A. Brown, Jr., which was dated September 26, 1996 and signed by Debra June McKinney Carter "as attorney-in-fact" for Mr. and Mrs. McKinney.  The warranty deed between the McKinneys and Mr. Brown was recorded in Cobb County, Georgia on October 30, 2009.  By contrast, the warranty deed between Mr. Brown and Ms. Vasko, dated September 27, 1996, was never recorded.  When the foreclosure proceedings were initiated in November 2011, therefore, Ms. Vasko also had notice that Mr. Brown had a potential ownership interest in the Nathan Lane property, whereas the instrument which allegedly created her interest in the property had never been properly recorded.

Under Georgia law, in November 2011, when the Bank of Oklahoma foreclosed on the Nathan Lane property and transferred the property to the VA, once the foreclosure sale to the Secretary of Veterans Affairs was completed, plaintiff became a tenant at sufferance. <u>See, e.g.</u>, <u>Bellamy v. F.D.I.C.</u>, 512 S.E.2d 671, 675 (Ga. Ct. App.

18

1999) (citations omitted) ("Where former owners of real property remain in possession after a foreclosure sale, they become tenants at sufferance."). The Secretary of Veterans Affairs was then able to begin a proceeding against any holdover tenant, which was accomplished on January 10, 2012. See Ga. Code Ann. § 44-7-50 (2012). Plaintiff received notice of the proceeding and alleges that she appeared at two hearings before the Cobb County Magistrate Court before the writ of possession in favor of defendant was signed on March 2, 2012. After the writ was signed, defendant's counsel notified the court that plaintiff intended to appeal, and the court entered an Order allowing plaintiff to remain pending the appeal, but requiring plaintiff to pay rent into the court pursuant to Georgia statute § 44-7-54. Plaintiff, however, only paid rent to the court once in March 2012, and violated the Order of the Georgia court when she failed to make an April 2012 payment, and did not file a timely appeal. Accordingly, on April 13, 2012, the Magistrate Court ordered that plaintiff was "no longer entitled to possession" of the Nathan Lane property and that the Secretary of Veterans Affairs was "entitled to enforce the Writ of Possession," and remove plaintiff from the premises. Plaintiff, therefore, cannot establish a legally cognizable property interest in the Nathan Lane, Austell, Georgia property.

Plaintiff also fails to establish that the government took the property in question for a public use. To prevail in a takings claim, a plaintiff must show that the government took a private property interest for public use without just compensation. See Adams v. United States, 391 F.3d at 1218; Arbelaez v. United States, 94 Fed. Cl. at 762; Gahagan v. United States, 72 Fed. Cl. at 162. Although plaintiff tries to suggest a public use when she claims that, "[t]he taking is part of the Cobb County neighborhood stabilization project," plaintiff ultimately acknowledges in her later reply that the government did not take her property for a public use, when she states that: "Plaintiff has no concrete information establishing the reason Defendant acquired her property . . . . There is a presumption that the mere taking by the Government is for public use . . . . At this point any prior statement by Plaintiff regarding public use has proved not true." Without even alleging, much less establishing, a public use, plaintiff cannot establish a takings claim under the Fifth Amendment.

In "Plaintiff's First Supplemental Pleading," plaintiff also claims that "[t]he taking of possessions of Plaintiff and Plaintiff's family in the house and their damage is a taking deserving just compensation." Plaintiff claims this personal property included a "GE Profile [stove] and such items as bookshelves, dishwasher, faucets, and [a] variety of other items kept in the house." Plaintiff also claims that "Defendant's obstruction of accessibility to Plaintiff's and Plaintiff's possessions is a taking deserving just compensation." Plaintiff asserts that "during . . . Eviction #2 [the October 19, 2012 eviction] Defendant failed to put Plaintiff's family's possessions in areas wherein Plaintiff's family could remove them." Plaintiff further asserts that, "[i]t was evident from discussion with Defendant's agents that Plaintiff's family's possessions were being kept for their own use and profit. Defendant refused to allow Plaintiff her possessions when she asked for them." Although plaintiff states that she "is not claiming a tort," plaintiff concedes in her March 7, 2013 filing that the alleged actions by defendant were not in

the nature of a taking, but a conversion, and, therefore, a tort claim, not within the jurisdiction of this court.

In addition, many of the items of "personal property" plaintiff identifies as allegedly taken by defendant appear to be fixtures to the real property. Georgia law states that, "[a]nything which is intended to remain permanently in its place even if it is not actually attached to the land is a fixture which constitutes a part of the realty and passes with it." Ga. Code Ann. § 44-1-6(a) (2012); see also Ga. Code Ann. § 44-1-2(a)(2) (2012) (definition of real estate includes "[a]ll things permanently attached to land or to the buildings thereon"). In determining if personal property is a fixture intended to remain permanently with the real property, Georgia courts consider "'the circumstances under which the article was placed upon the realty, the uses to which it is adapted, and the parties who are at issue . . . .'" State v. Dyson, 81 S.E.2d 217, 219 (Ga. Ct. App. 1954) (quoting Wolff v. Sampson, 51 S.E. 335 (Ga. 1905); Consolidated Warehouse Co. v. Smith, 189 S.E. 724 (Ga. Ct. App. 1937)); see also Burpee v. Athens Prod. Credit Ass'n, 15 S.E.2d 526 (Ga. Ct. App. 1941) (furnace and its appliances installed in basement were determined to be part of the realty to which it was attached). The security deed conveying property also may identify items that are to remain with the property. See Consolidated Warehouse Co. v. Smith, 189 S.E. at 726 (citing Wolff v. Sampson, 51 S.E. at 335). In plaintiff's case, the 1992 security deed entered into by the McKinneys specifically included "all fixtures now or hereafter attached to or used in connection with the premises herein described and in addition thereto the following described household appliances, which are, and shall be deemed to be, fixtures and a part of the realty . . .: range/oven, fan/hood, [and] dishwasher." In exercising the right to repossess the property located at 1721 Nathan Lane, defendant appears also to have had the right to repossess the fixtures to that property, and to the extent it would be considered a taking, plaintiff has not demonstrated a legally cognizable property interest, nor that the government took the property for a public use.

### *Torts Claim*

To the extent that plaintiff may request relief from conduct sounding in tort by federal officials with reference to damage or unavailability to her of her personal property, the Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a)(1); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir. 1994), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). It is well

established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 130 S. Ct. 1181, 1193 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). Therefore, jurisdiction does not arise in this court for any claim by plaintiff of tortious conduct.

**Due Process Claim**

In addition, plaintiff alleges a due process claim in "Plaintiff's First Supplemental Pleading." Plaintiff asserts that the "[d]ispossessory denies Plaintiff her constitutionally protected rights," apparently in reference to the state court removal proceeding. Plaintiff alleges:

> [T]he remand back to the state level of the Cobb County Magistrate Court effectuating Eviction #2 is illegal . . . . The due process violations continue with J. Pannell [Judge Pannell of the U.S. District Court of the Northern District of Georgia] . . . the magistrate court of the initial dispossessory action was without jurisdiction . . . [and] [p]roper service for the foreclosure was lacking.

Plaintiff also mixes allegations of her takings claim and a due process claim when discussing the monthly payments she made to Mr. Brown, allegedly, in exchange for residing at the Nathan Lane property, stating that "[p]laintiff kept on paying for the mortgage, thinking the house was hers, when in reality Plaintiff was just paying off the VA loan, to the benefit of Defendant. Plaintiff claims that this offends due process and is a taking." The mortgage payments in question were made to Mr. Brown, who in turn paid, or failed to pay, the Bank of Oklahoma, not the United States. None of the payments were made to the VA. Nor was the foreclosure by the Bank of Oklahoma a taking. "[F]oreclosure by a private lender of a mortgage in a federal mortgage guaranty program does not involve federal action sufficient to invoke the due process clause of the Fifth Amendment." Rank v. Nimmo, 677 F.2d 692, 702 (9th Cir. 1982) (citing Warren v. Gov't Nat'l Mortg. Ass'n, 611 F.2d 1229, 1232 (8th Cir.), cert. denied, 449 U.S. 847 (1980); Roberts v. Cameron-Brown Co., 556 F.2d 356, 358-60 (5th Cir. 1977); Fitzgerald v. Cleland, 498 F. Supp. 341, 348–49 (D. Maine, 1980), aff'd in part, rev'd in part, 650 F.2d 360 (1st Cir. 1981)). Referring to her claims collectively, plaintiff states:

This Court continues to have subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491, as the claims set forth herein are founded in the Constitution, or an Act of Congress, or regulation of the executive department, or upon express or implied contract with the United States, for unliquidated damages not sounding in tort.

The United States Court of Appeals for the Federal Circuit, however, has held that this court does not possess jurisdiction to consider claims arising under the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments)); see also In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied, 552 U.S. 940 (2007); Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment's Due Process clause does not include language mandating the payment of money damages); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. dismissed, 132 S. Ct. 1105 (2012); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)). Due process claims "must be heard in District Court." Kam–Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); see also Hampel v. United States, 97 Fed. Cl. at 238. Therefore, to the extent that plaintiff is attempting to raise allegations of due process violations, no such cause of action can be brought in this court.

While the United States Court of Federal Claims possesses jurisdiction over breach of contract and takings claims, considering plaintiff's allegations as true for the purposes of the motion to dismiss and drawing all reasonable inferences in favor of plaintiff, the court finds that plaintiff has failed to state a claim for which relief can be granted with regard to both her breach of contract and her various takings claims. In addition, this court does not have jurisdiction to entertain plaintiff's tort or due process claims.

## CONCLUSION

For the foregoing reasons, plaintiff has not alleged a breach of contract claim or a takings claim upon which relief can be granted, nor is there jurisdiction in this court to address plaintiff's tort or due process claims.   Therefore, the court **GRANTS** defendant's motion to dismiss.  Plaintiff's complaint is **DISMISSED**, with prejudice.  The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED**.

**MARIAN BLANK HORN**
**Judge**